**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

EMPIRE HOME SERVICES, L.L.C.,

        Plaintiff/Counter-Defendant,

v.                                   Case No. 05-CV-72584-DT

EMPIRE IRON WORKS, INC.,

        Defendant/Counter-Plaintiff.

_____/

**OPINION AND ORDER GRANTING PLAINTIFF'S "MOTION TO DISMISS . . . ,"
DENYING DEFENDANT'S "MOTION FOR SUMMARY JUDGMENT . . . ,"
DENYING PLAINTIFF'S "EX PARTE MOTION FOR LEAVE TO
FILE EXHIBITS . . . ," DENYING DEFENDANT'S "MOTION TO STRIKE THE
DECLARATION[S] . . ." AND GRANTING DEFENDANT'S MOTION
"FOR FEES AND COSTS FOR THE DEPOSITIONS . . . "**

Pending before the court are Plaintiff/Counter-Defendant Empire Home Services, L.L.C.'s ("EHS") "Motion to Dismiss Counts VI through XVII of the Counter-Complaint" and Defendant/Counter-Plaintiff Empire Iron Works, Inc.'s ("EIW") "Motion for Summary Judgment . . . ."  Also pending are EHS's ex parte motion for leave to file exhibits, EIW's motion to strike certain declarations and EIW's motion for fees and costs for depositions.  The motions have been fully briefed and the court heard oral argument on the motion to dismiss and the motion for summary judgment on December 20, 2006. For the other motions, the court concludes that a hearing is not necessary.  *See* E.D. Mich. LR 7.1(e)(2).  For the reasons stated below, the court will grant EHS's motion to dismiss, deny EIW's motions for summary judgment and to strike and grant EIW's motion for fees and costs.

## I.  INTRODUCTION

EHS initiated this action on June 29, 2005.  EHS alleges that it operates a home furnishing and home improvement business in over 30 states, including Michigan, and uses the name "Empire Today" in association with the sale of its products.  (Am. Compl. at ¶¶ 8, 30.)  EHS also alleges that EIW markets and installs doors, windows, and related accessories.  (*Id.* at ¶ 11.)  EHS contends that "Defendant's use of [the] tagline 'Call Empire Today'" constitutes unfair competition under the Trademark Act of 1946 § 43(a), 15 U.S.C. § 1125(a) ("Lanham Act").  (*Id.* at ¶¶ 28-36.)  In the original complaint, EHS sought monetary and injunctive relief under the common law and the Lanham Act. (Compl. at ¶¶ 26-44.)  EHS further sought to restrain EIW's use of the term "Empire Today."  (*Id.* at ¶¶ 45-46.)  EHS's original complaint asserted that "Empire Today" is a federally registered trademark, (*id.* at ¶10), made repeated reference to this "mark," (*see*, *e.g.*, *id.* at ¶¶ 13-19) and stated a claim for trademark infringement, (*id.* at ¶ 26-34).

EHS later sought leave to amend its complaint, which the court granted after considering the parties' briefs on the issue and their arguments during a June 22, 2006 hearing.  The amended complaint states a sole count under the Lanham Act and requests numerous forms of relief, including injunctive relief.  (Am. Compl. at 6-7.)  The amended complaint drops all reference to "Empire Today" as a registered trademark, omits EHS's previous claim of trademark infringement and seeks relief for a sole count of unfair competition under 15 U.S.C. §1125(a).  (*Id.* at ¶¶ 28-36.)

EIW's counter-complaint alleges that it has used various "Empire" marks in Michigan since 1977 "to promote the sale and installation of its window and door

2

products to the public." (Counter-Compl. at ¶¶ 5-6.) EIW contends that its use of

Empire in this judicial district with respect to doors and windows precedes the effective

date of various federal service marks that EHS filed with the U.S. Patent & Trademark

Office ("USPTO"). (*Id.* at ¶¶ 7-8.) EIW's counter-complaint alleges unfair competition

under the Lanham Act, service mark infringement under Michigan statutory law, and

common law claims of unjust enrichment, unfair competition and trademark

infringement. (*Id.* at ¶¶ 42-69.) Counts VI-XVII seek the cancellation of certain alleged

current and pending service mark registrations of EHS. (*Id.* at ¶¶ 70-114.)

## II. EHS's MOTION TO DISMISS

### A. Background

On September 21, 2006, EHS filed a motion to dismiss Counts VI-XVII of EIW's

counter-complaint. EHS argues that its claim for unfair competition under the Lanham

Act "does not involve the assertion of any Trademark Registration." (Pl.'s Br. at 7.) It

contends that Counts VI-XVII seek cancellation of trademarks that are unrelated to

EHS's original claim and not "'in play.'" (*Id.*) EHS asserts that these counts "would

grossly and improperly expand the scope of this litigation . . . ." (*Id.*)

EHS states that its one count against EIW is limited to "EIW's use of EHS's

assumed name and common law trademark 'Empire Today' in its advertising [and that]

EIW's use of EHS's trademark constitutes infringement and palming off." (*Id.* at 8.) EHS

cites *Whitney Information Network, Inc. v. Gagnon*., 353 F. Supp. 2d 1208, 1211 (M.D.

Fla. 2005), for the proposition that "[w]here an action does not involve a registered

trademark, a claim for cancellation under 15 U.S.C. § 1119 does not lie and dismissal is

appropriate and permissible." (Pl.'s Br. at 9.)

3

EIW responds that this action does involve the registered trademarks for "Empire Today" and that the court has jurisdiction over Counts VI-XVII under 28 U.S.C. § 1367 because they are compulsory counterclaims under Federal Rule of Civil Procedure 13(a). (Def.'s Br. at 2.)[1] EIW alleges that, during the pendency of this action, EHS amended at least two of its registered marks with the USPTO "to avoid possible cancellation of the marks" because the marks set forth protection for specific goods and services without meeting the requirement that these goods and services were actually placed in commerce. (*Id.* at 7.) EIW also argues that its use of "Empire Today" precedes EHS's use, providing another ground for cancellation of EHS's registered marks. (*Id.* at 8.) EIW states that EHS's registrations claim a first use of September 11, 2003, which "would serve as a statement against their own interest." (*Id.*) EIW also contends that EHS's complaint has invoked the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq*, and that "a declaration of the respective rights to 'Empire Today' between these parties would include the rights to register the identified designation (i.e. 'Empire Today')." (*Id.* at 10.)

---

[1]Because different sections of the response repeat some of the same page numbers, the court will use the page numbering created by its electronic filing system.

### B.  Standard

In ruling on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court must construe the complaint in a light most favorable to the plaintiff,[2] accept all the factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claims that would entitle him to relief.  *Perry v. Am. Tobacco Co.*, 324 F.3d 845, 848 (6th Cir. 2003); *Bibbo v. Dean Witter Reynolds, Inc.*, 151 F.3d 559, 561 (6th Cir. 1998); *Sistrunk v. City of Strongsville*, 99 F.3d 194, 197 (6th Cir. 1996).  When an allegation is capable of more than one inference, it must be construed in the plaintiff's favor.  *Claybrook v. Birchwell*, 199 F.3d 350, 354 (6th Cir. 2000) (citing *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995)); *In re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993).  Hence, a judge may not grant a Rule 12(b)(6) motion based on a disbelief of a complaint's factual allegations.  *Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356, 360 (6th Cir. 2001); *Columbia Natural Res.*, 58 F.3d at 1109.

Though decidedly liberal, this standard of review does require more than the bare assertion of legal conclusions.  *Anderson v. Ohio*, 104 F.3d 803, 806 (6th Cir. 1997); *Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716, 726 (6th Cir. 1996).  The complaint should give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.  *EEOC v. J.H. Routh Packing Co.*, 246 F.3d 850, 854 (6th Cir. 2001) .  "In practice, 'a . . . complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under *some* viable legal

---

[2]EIW as counter-plaintiff is "the plaintiff" for purposes of this court's 12(b)(6) analysis.

theory.'" *Lillard*, 76 F.3d at 726 (quoting *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988)).

In determining whether to grant a Rule 12(b)(6) motion, "the court primarily considers the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account." *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001) (emphasis omitted) (citing *Nieman v. NLO, Inc.*, 108 F.3d 1546, 1554 (6th Cir. 1997)).

### C.  Discussion

EHS, in its amended complaint, alleges unfair use by EIW of "Empire Today," EHS's assumed name, and seeks injunctive relief pursuant to the Lanham Act § 43(a), 15 U.S.C. § 1125(a).  (Am. Compl. at ¶¶ 28-36.)  The Sixth Circuit has held that:

> [w]hether alleging infringement of a registered trademark, pursuant to 15 U.S.C. § 1114(1), or infringement of an unregistered trademark, pursuant to 15 U.S.C. § 1125(a)(1), it is clear that a plaintiff must show that it has actually used the designation at issue *as a trademark*, and that the defendant has also used the same or a similar designation *as a trademark*.  In other words, the plaintiff must establish a likelihood that the defendant's designation will be confused with the plaintiff's trademark, such that consumers are mistakenly led to believe that the defendant's goods are produced or sponsored by the plaintiff.

*Rock & Roll Hall of Fame & Museum, Inc. v. Gentile Prods.*, 134 F.3d 749, 753-54 (6th Cir. 1998).  A party "establishes a common law right to a trademark only by demonstrating that its use of the mark was 'deliberate and continuous, not sporadic, casual or transitory.'"  *Circuit City Stores, Inc. v. Carmax, Inc.*, 165 F.3d 1047, 1054-55 (6th Cir. 1999) (quoting *La Societe Anonyme des Parfums le Galion v. Jean Patou, Inc.*, 495 F.2d 1265, 1272 (2d Cir. 1974)).

6

The Supreme Court has held that "it is common ground that § 43(a) protects qualified unregistered trademarks and that the general principles qualifying a trademark for registration under § 2 of the Lanham Act are for the most part applicable in determining whether an unregistered mark is entitled to protection under § 43(a)." *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992).

Although actions for registered an unregistered trademarks have considerable inherent overlap, there are areas of departure between the two in substance and procedure. An administrative petition before the USPTO to cancel a registration of a mark is authorized by statute. 15 U.S.C. § 1064. According to that provision:

> A petition to cancel a registration of a mark, stating the grounds relied upon, may, upon payment of the prescribed fee, be filed as follows by any person who believes that he or she is or will be damaged, including as a result of dilution by blurring or dilution by tarnishment under section 1125(a) of this title, by registration of a mark on the principal register established by this chapter . . . .

*Id.* The remaining provisions of §1064 *et seq.* set out detailed procedures for a petition to cancel a registered mark.

Meanwhile, a federal district court also has the authority in some circumstances to cancel a registered mark:

> In any action *involving a registered mark* the court may determine the right to registration, order the cancellation of registrations, in whole or in part, restore cancelled registrations, and otherwise rectify the register with respect to the registrations of any party to the action.

15 U.S.C. § 1119 (emphasis added). The key question is whether the action before the court involves a registered mark. The court finds that this action does not involve a registered mark and rejects EIW's attempt in its counter-complaint to seek cancellation of several of EHS's registered marks.

7

EHS provides the court with persuasive case law regarding improper attempts by defendants, usually in a counter-complaint, to seek cancellation of a registered mark in actions that did not involve registered marks.[3]  The existence of a pending application for a federal trademark is not sufficient for purposes of § 1119.  *Whitney*, 353 F. Supp. 2d at 1211.  In *Universal Sewing Machine Co. v. Standard Sewing Equipment Corp.*, 185 F. Supp. 257 (S.D.N.Y. 1960), the court distinguished between offensive and defensive attempts to cancel a registered mark:

> one seeking cancellation offensively and relying solely upon that claim for federal jurisdiction would seem to be relegated to first exhausting his administrative remedies before resorting to the courts.  Such a situation, exemplified by the instant action, must be distinguished from the cases where there is present some independent basis of federal jurisdiction, and wherein the validity of a registered trademark is brought into issue, for example, by way of defense (*Bascom Launder Corp. v. Telecoin Corp.*, 204 F.2d 331, 335 (2nd Cir. 1953)) or counterclaim. *See, e.g., Avon Shoe Co. v. David Crystal, Inc.*, 171 F. Supp. 293, 297 (S.D.N.Y. 1959), aff'd 279 F.2d 607 (2nd Cir. 1960).

*Id.* at 259-60.

In this case, EIW is not claiming registration of a mark in "Empire Today" as a defense to EHS's claim of unfair competition under §1125(a).  Instead, EIW raises

---

[3]The Sixth Circuit appears to have not expressly decided the issue.  In *Allard Enterprises, Inc. v. Advanced Programming Resources, Inc.* 249, F.3d 564 (6th Cir. 2001) ("*Allard II*"), the circuit court reversed a district court's grant, after remand, of leave to amend the defendant's counterclaim to allow the defendant to seek cancellation of a mark.  *Id.* at 570-71.  But the circuit court's reasoning was limited to the determination that the district court exceeded the scope of remand and therefore violated the mandate rule.  *Id.* at 571.  *Allard II* therefore did not decide the question of whether an action involved a registered mark and, concomitantly, the viability of a counterclaim seeking cancellation of the mark.  *Allard II* instead concerned the geographic extent of the rights of a senior user vis-a-vis the rights of a junior user with a federal trademark registration.  *See Jaro Transportation Services, Inc. v. Grandy*, No. 04-01227, 2006 WL 2553424 (N.D. Ohio, Sept. 5, 2006).

registration offensively in its counter-complaint.  Though *Universal Sewing* refers to a counterclaim as a potential valid independent basis for deciding whether to cancel a registered mark, the case it cites, *Avon Shoe*, was an "action based upon alleged infringement of registered shoe and glove trademarks claimed by plaintiffs, and upon unfair competition."  171 F. Supp. at 297.  EHS's amended complaint, however, drops all reference to its registered mark and effectively dismisses without prejudice its original claim of trademark infringement.  The proper avenue for EIW to seek cancellation of EHS's registered trademarks is therefore an administrative petition before the USPTO under §1064.[4]

The fact that EHS initially put its registered mark at issue in its original complaint does not change the analysis or the court's conclusion.  The relevant inquiry is the nature of the action before the court, not the nature of the suit as it was in the past or as it might be in the future.  A plaintiff naturally is master of his own complaint and therefore may decide the contours of the relief he seeks.  The court, having decided to allow EHS to amend its complaint and scale back its originally plead-for relief, will not revisit that decision.  The court is not persuaded by EIW's argument that potential declaratory relief in this action necessarily requires a global determination of the parties' rights to "Empire Today" as a registered trademark.  Depending upon the particular facts of a case, similar or identical registered and unregistered marks may coexist in limited geographic regions, depending upon determinations of first commercial use.

---

[4]The court is further mindful of the fact that several of the registered trademarks of EHS that EIW attempts to put at issue do not even contain the words "Empire Today." (Pl.'s Br. at 9-10.)

*See e.g.*, *Allard II*, 249 F.3d at 572-75.  Nor is the court persuaded that EIW's counter-claim for cancellation of EHS's registered mark qualifies as a compulsory counter-claim under Federal Rule of Civil Procedure 13(a).  If that conclusion were required, then there would be little use for the administrative procedures set out under §1064.  As the defendant in this litigation, EIW has neither the luxury of deciding when it is sued or the nature of the suit against it.  Section 1119 also grants no such luxury.  The court will therefore grant EHS's motion and dismiss the counter-claims of EIW that seek cancellation of EHS's registered marks.

### III.  EIW'S MOTION "TO COMPEL DISCOVERY . . ."

EIW's above-entitled motion concerns discovery that is allegedly relevant to its counter-claims for cancellation of EHS's trademark registrations.  Because the court will grant EHS's motion to dismiss those counterclaims, EIW's motion to compel is moot.  The court will therefore deny the motion.

### IV.  EIW'S MOTION FOR SUMMARY JUDGMENT

### A.  Background

EIW filed its motion for summary judgment on November 2, 2006.  It raises three principal arguments in support of the motion.  First, EIW contends that it has prior use of "Call Empire Today" in commerce and that EHS therefore has not established any violation under the Lanham Act.  (Def.'s Br. at 14-15.)  Second, EIW argues that its use of "Call Empire Today" is protected as free speech and as commercial speech.  (*Id.* at 15-20.)  Third, EIW contends that its use of "Call Empire Today" is protected as fair use under 15 U.S.C. § 1115(b)(4).  (*Id.* at 20-25.)  EHS responds that it first used "Empire

Today" and that EIW's use is not constitutionally protected and does not constitute fair use.  (Pl.'s Resp. at 4-5, 10-13.)

## B.  Standard

Under Federal Rule of Civil Procedure 56, summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  "Where the moving party has carried its burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record construed favorably to the non-moving party, do not raise a genuine issue of material fact for trial, entry of summary judgment is appropriate."  *Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir. 1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)).

Summary judgment is not appropriate when "the evidence presents a sufficient disagreement to require submission to a jury."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).  The existence of some factual dispute, however, does not defeat a properly supported motion for summary judgment; the disputed factual issue must be material.  *See id.* at 252 ("The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict-'whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the *onus* of proof is imposed.'").  A fact is "material" for purposes of summary judgment when proof of that fact would have the effect of establishing or refuting an essential element of the claim or a defense advanced by either party.  *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984).

11

In considering a motion for summary judgment, the court must view the facts and draw all reasonable inferences from those facts in a manner most favorable to the nonmoving party. *Wexler v. White's Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986)). The court is not to weigh the evidence to determine the truth of the matter, but must determine if there is a genuine issue for trial. *Sagan v. United States*, 342 F.3d 493, 497 (6th Cir. 2003).

## C. Discussion

### 1. Generally

According to the Lanham Act:

(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which--

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C.A. § 1125(a). The key inquiry for EHS's claim of unfair competition is the likelihood of confusion. *General Motors Corp. v. Keystone Auto. Indus., Inc.*, 453 F.3d 351, 354 (6th Cir. 2006). The Sixth Circuit applies an eight-factor test in determining likelihood of confusion: (1) strength of the plaintiff's mark, (2) relatedness of the good,

12

(3) similarity of the marks, (4) evidence of actual confusion, (5) marketing channels used, (6) likely degree of purchaser care, (7) defendant's intent in selecting the mark and (8) likelihood of expansion of the product lines. *Id.* Not all of these factors are necessarily helpful in any given case, and other factors may come into play given the particular facts of a case. *Id.* at 355 (citations omitted).

## 2. Prior Use

There is at least a question of fact regarding who first used "Call Empire Today" in commerce. EIW cites the deposition testimony of a few EHS deponents who did not know the earliest date that EHS first advertised with the slogan "Call Empire Today." (Def.'s Br. at 7.) EIW then purports to establish September 11, 2003 as the earliest date of use for EHS, based upon the date listed in EHS's trademark registrations. (*Id.* at 7; Registrations, Def.'s Ex. A.) The record evidence before the court indicates, apparently without dispute from EHS, that the earliest date of any EIW advertisements using "Call Empire Today" was September 3, 2002. (Newspaper Advertisements, Def.'s Ex. C-4.) Previously, EIW used the phrase "Call Now." (Newspaper Advertisement, Def.'s Ex. D).[5]

---

[5]EIW's contends that it "has frequently used the words 'Empire' and 'Today' in the same advertisements as early as 1991 . . . ." (Def.'s Br. at 8.) The court has reviewed these advertisements, which appear as Exhibit D to EIW's brief, and finds them unavailing. In these advertisements, "Empire" and "today" do not appear as an uninterrupted or singular statement or even in the same general vicinity. For example, the word "today" in the advertisement of May 20, 1992 is buried in small font at the end of a paragraph urging readers to "Visit Empire Iron Works' large, conveniently located showroom today." This paragraph is towards the bottom of an advertisement that has EIW's name in larger font towards the top of the page. The fact that "Empire" and "Today" appear in separate corners (or even in the same paragraph) of pre-2002 advertisements bears little or no relevance to the court's inquiry regarding which party

13

EHS, meanwhile, attaches two declarations to its response, which contend a date of first usage for "Empire Today" that predates that of EIW.[6] Joel Glantz, a senior executive in charge of EHS's advertising, marketing and sales for the last twenty years, states that EHS entered the Michigan market, where EIW operates, in August 2000. (Glantz Decl. at ¶¶ 1, 3.)  EHS began using the slogan "Empire Today, Carpet Tomorrow" in May 1986 in the Chicago area and, beginning in May 1990, on billboards along interstates in northern Indiana.  (*Id.* at ¶ 5.)  The court, viewing these facts in the light most favorable to EHS, will accept Glantz's statement that Michigan citizens driving through Indiana would have seen these billboards.  (*Id.*)  Since at least 1993, Michigan cable television viewers would have also seen commercials on WGN that used "Empire Today, Carpeting Tomorrow."  (*Id.* at ¶ 6.)

Concerning television commercials that aired on Michigan stations, Glantz states that EHS identified a commercial produced on July 5, 2000 that displayed the words "Empire Today."  (*Id.* at ¶ 11.)  Though EHS lacks invoices proving when this commercial aired, Glantz claims that he is "able to state with almost one hundred percent certainty, however, that any ads that [EHS] produced were typically aired within a three-eight week period."  (*Id.*)  EHS located a different advertisement in which the spokesperson utters the phrase "Call Empire Today" on several air dates in January

---

first used "Empire Today" in commerce.

[6]The court will rely upon these declarations despite EIW's stated intention to strike these declarations under Federal Rule of Civil Procedure 12(f) for EHS's failure to produce these individuals earlier.  (Def.'s Reply Br. at 2.)  After the hearing, EIW in fact moved to strike these declarations.  The court will, for the reasons stated in a separate section below, deny the motion to strike.

14

and February 2001, according to a copy of an invoice that EHS has not presented to the court. (*Id.* at ¶ 12.)  Finally, Glantz identifies two others advertisements featuring the same voice-over slogan that he believes aired near August 2000 when EHS entered the Michigan market because the carpeting installation financial terms required no payments and no interest until January 2002, over one year later.  (*Id.*)

In a separate declaration, Shannon Jennings, a paralegal of EHS's counsel,[7] states that she reviewed EHS commercials that aired in Detroit in 2000 through 2002. (Jennings Decl. at ¶¶ 1-3.)  She states that she heard the phrase "Call Empire Today" in two commercials that have a production date of July 11, 2000.  (*Id.* at ¶ 4.)[8]

Based upon the foregoing, the court is not persuaded that EIW has not shown the absence of a question of material fact regarding its prior use of "Empire Today." The declarations before the court create a question of fact that EIW cannot avoid by relying solely upon EHS's trademark registrations for the date of EHS's first use.

---

[7]The court doubts that this paralegal's summary of the evidence would qualify as admissible evidence from a witness competent to testify.  Its probative value, further, is limited, as it is merely a report of her review of separate direct evidence in her capacity as part of EHS's retained counsel.  Accordingly, the court will not rely upon the Jennings declaration.

[8]None of the television commercials or invoices referenced in EHS's declarations are themselves before the court as evidence.  (EHS did file an ex parte motion for leave to submit a recording of the commercials, which the court will consider below.) However, because the court is required to view the evidence in the light most favorable to EHS and not to make credibility determinations, it will accept the Glantz declaration as true.

The court has further reviewed the EHS television advertisements that EIW presented on disk and notes that the first one to use "Empire Today" has an apparent production date of January 10, 2003, which is after EIW's first "Empire Today" print advertisement of September 3, 2002.

15

Further, because the parties have not extensively briefed the issue of likelihood of confusion, the court will not decided the issue at this juncture. It instead appears to the court that this issue and the eight-factor test will implicate a number of questions of fact that the parties will have to contest at trial.

### 3. First Amendment

EIW's constitutional argument is unpersuasive. To the extent that EIW explicates case law stating general protections of commercial speech under the First Amendment, the court accepts that background law. But much of that law concerns government restraints on commercial speech, which is simply not present in an intellectual property dispute between two private parties. EIW has not persuasively argued how its speech rights vis-a-vis the government are implicated in its property dispute with EHS, other than the obvious fact that a government body, this court, is charged with deciding that dispute.

EIW relies on *WCVB-TV v. Boston Athletic Assoc.*, 926 F.2d 42 (1st Cir. 1991), where the First Circuit considered the extent to which a television station could say "Boston Marathon." The court stated that a federal trademark gives the holder a property right that prevents confusion but that necessarily descriptive terms such as "Boston Marathon" may be broadcasted without violating the rights of the holder. *Id.* at 44-45. *WCVB-TV* is not particularly helpful, first, because the likelihood of confusion at issue concerned whether the broadcasters were affiliated with, or otherwise had the "impramatur" of, the organizers of the Boston Marathon. *Id.* at 44. It was not a case, as is this one, concerning claimed confusion about the origin of particular goods or

16

services.  Further, the necessity of a broadcast describing an event by its proper name does not translate, as EIW argues, in the context of EIW needing to use "Call Empire Today" in order "to communicate to the public a message of expediency and urgency, by urging the consumers to contact [EIW] on the same day on which they view or perceive the ad . . . ." (Def.'s Br. at 17.)  There are myriad ways to communicate that message.  EIW's argument is further belied by the fact that its advertisements long relied, and apparently continue to rely, instead upon "Call Now."  (Advertisements, Def.'s Ex. D; Jennings Decl. at ¶ 6.)

The key component of EIW's argument presumes to decide the central issue of fact in this case:

> [EIW's] use of 'Call Empire Today' communicates an important message that [EIW] wants the consumer to inquire about [EIW's] goods and services in an expedient and prompt manner; it does not cause any interference, confusion, or misconception about [EIW's] affiliation with [EHS] or about [EHS's] goods and services.

(Def.'s Br. at 13.)  As the court stated above, however, the issue of likelihood of confusion implicates a number of questions of fact that the parties must contest at trial. For example, although EIW now cites to deposition testimony stating that EHS is unaware of any actual confusion among consumers, (*id.* at 9 n.2), EIW claimed actual confusion in its motion for a temporary restraining order and presented the court with several affidavits as evidence, (9/14/05 Def.'s Br. at 26-27).  "Call Empire Today" is more than an informational public service announcement.  It is a component of a commercial advertisement soliciting business for a particular enterprise that, arguably and as EHS contends, obscures for consumers the actual origin of the goods and

17

services they seek in the marketplace.  At the very least, there is a question of fact and EIW's argument presents no constitutional bar to deciding that fact in favor of one party or the other.

### 4.  Fair Use

EIW's fair use argument has substantial overlap with its constitutional argument. The fair use defense finds its origin in statute:

> That the use of the name, term, or device charged to be an infringement is a use, otherwise than as a mark, of the party's individual name in his own business, or of the individual name of anyone in privity with such party, or of a term or device which is descriptive of and used fairly and in good faith only to describe the goods or services of such party, or their geographic origin . . . .

15 U.S.C. § 1115(b)(4).  For the reasons stated above, the court is not convinced that "Call Empire Today" is a necessarily descriptive phrase entitled to fair use protection. EIW presents an inventive argument based upon *Playboy Enterprises v. Welles*, 279 F.3d 796 (9th Cir. 2002).  The Ninth Circuit held that "[n]o descriptive substitute exists" for Playboy's trademarks, which included Playmate of the Year.  *Id.* at 800, 802. Quoting the district court below, the court wrote:

> [T]here is no other way that Ms. Welles can identify herself or describe her services without venturing into absurd descriptive phrases.  To describe herself as the "nude model selected by Mr. Hefner's magazine as its number-one prototypical woman for the year 1981" would be impractical as well as ineffectual in identifying Terri Welles to the public.

*Id.* at 802 (quoting *Playboy Enterprises v. Welles*, 78 F. Supp. 2d. 1066, 1079 (S.D. Cal. 1999).

18

In the above vein, EIW argues that it should not be forced to tell the public to call it "'within the period not exceeding 86,400 seconds,' or perhaps 'Call Empire before the Earth performs a full rotation with respect to the Sun' (to describe a solar day) or "Call Empire before the Earth performs a full rotation with respect to the distant stars' (to described a sidereal day)." (Def.'s Br. at 15-16 n.3.)  The argument is unavailing.  As far as the public is concerned, "today" is not essential to communicating the meaning EIW intends: to call soon. (Def.'s Br. at 17, 20.)  "Call now" or some version of "Call Today" without uttering "Call Empire Today," such as "Call Empire Iron Works Today," would be adequate, effectual and not absurd.  EIW's message to contact it soon does not defy description the way that Ms. Welles's message identifying herself would have if she could not call herself the Playmate of the Year 1981.  EIW's putative predicament bears no resemblance to the situation described in *Welles*.

The other case law EIW cites can be similarly distinguished.  The core of the parties' dispute remains fact-oriented: the likelihood of confusion based upon the eight-factor test as well as any other relevant factors.  EIW's motion, by its very nature, cannot properly resolve the dispute and it will therefore be denied.

## V.  EIW'S MOTION "TO STRIKE THE DECLARATION OF JOEL GLANTZ AND DECLARATION OF SHANNON JENNINGS . . ."

EIW filed a motion on December 19, 2006, requesting that the court strike the above relied-upon declarations of Glantz and Jennings.  Because the court did not rely upon the latter, it will consider only EIW's arguments as they relate to Glantz.  EIW argues that this declaration is improper because (1) it is an improper filing under Rule 56(e) due to EHS's failure in its interrogatory responses to identify him as a

19

knowledgeable witness, (2) EHS, in response to EIW's notice of deposition pursuant to Rule 30(b)(6), identified other witnesses as knowledgeable, (3) the declaration is particularly prejudicial to EIW under Rule 30(b)(6) and (4) the declaration violates the best evidence rule.  (Def.'s Mot. to Strike at 11-23.)  EHS did not respond to the motion. The court will deny the motion.

In response to EIW's fourth argument under the best evidence rule, the court observes that it would be improper to apply that rule in this procedural context.  The purpose of the declaration is merely to support EHS's argument that there is a question of material fact.  As such, ultimate proof and which form of that proof is best left for a later determination, when issues of fact are properly resolved.  The court now turns to EIW's remaining arguments.

EIW has failed to sufficiently articulate its first argument under Rule 56(e).  While EIW cites background authority stating that evidence may be excluded at trial because of a party's failure to comply with disclosure and discovery rules, EIW presents no authority related to Rule 56(e) that would allow that outcome.  The rule itself contains no language about the timing of affidavits or what is improper after a motion for summary judgment is filed.  Nor does EIW present authority interpreting Rule 56(e) to that effect.

For similar reasons, the court does not find persuasive EIW's argument under Rule 30(b)(6).  Again, the rule itself says nothing about late-breaking declarations filed in response to a motion for summary judgment.  Instead, Rule 30(b)(6) addresses how a party should notice areas of discovery for a corporation and how that corporation must identify one or more officers knowledgeable in each area.  In this case, EIW claims that the Glantz declaration is intended to supplant the vague and non-committal testimony of

witnesses already identified by EHS as knowledgeable in its marketing activities and

then deposed by EIW.  As an initial matter, the court rejects EIW's argument that Glantz

contradicts the earlier depositions.  The problem with the earlier depositions was that

the deponents gave a series of answers claiming lack of knowledge or hedging whether

they were sure.  As such, there would be nothing for Glantz to contradict.  Nothing in

Rule 30(b)(6) has the effect of tying a corporate party's hands by requiring it to stick to

its deponents' stories (or lack thereof) in its attempts to avoid summary judgment.

Indeed, Rule 56(e) requires a non-moving part to go beyond the denials in its pleadings

and "set forth specific facts" by affidavit or otherwise.  There is thus nothing in Rule

30(b)(6) that would require this court to strike the Glantz Declaration.

        Finally, the court moves to EIW's claims of prejudice.  EIW's argument is

persuasive to a point.  EHS had every opportunity to present witnesses knowledgeable

about marketing and demonstrate to EIW that its prior use argument would be

unavailing.  EIW incurred expense in deposing unknowledgeable witnesses and not

learning, so to speak, what cards EHS held until after EHS responded to the motion for

summary judgment.  Nor did EIW have the benefit of deposing Glantz and discovering

his relevant personal knowledge.  The court will, as outlined below, remedy EIW's

prejudice, but that remedy should not take the form of excluding relevant and highly

probative evidence from full and fair consideration of the motion for summary judgment.

Ultimate prejudice would result to EHS if the truth of the matter were foreclosed for it to

pursue before the finder of fact.  Effective administration of justice, and the public

confidence it inspires, further, depends largely upon the truth-seeking function of the

finder of fact.

21

Rule 56 authorizes the court to award expenses or otherwise sanction a party if it should "appear to the satisfaction of the court at any time that any of the affidavits presented pursuant to this rule are presented in bad faith or solely for the purpose of delay." Fed. R. Civ. P. 56(g). It is clear that the Glantz Declaration was submitted for the purpose of avoiding summary judgment and therefore not only for the purpose of delay. Substantial delay, however, is the practical effect of the declaration, as it caused EIW to engage, rightly, in additional motion practice and prolonged the court's consideration of the merits of the original motion for summary judgment. Further, the court finds that the declaration was not made in good faith. The sudden, late timing and the important substance of the declaration essentially torpedoed EIW's prior use argument. Because EHS relied so heavily upon Glantz to avoid summary judgment, it should have identified Glantz much earlier in the litigation so that EIW could have had a full and fair opportunity to examine him. The court will therefore order that EHS make Glantz available to EIW for a deposition and that EHS pay all reasonable fees and costs that EIW incurs as a result of the deposition. Further, because the declaration uprooted one of the three principal grounds EIW presented in its motion for summary judgment, EHS shall pay one third of the reasonable fees and costs that EIW expended to file and argue that motion.

22

## VI.  EHS'S "EX PARTE MOTION FOR LEAVE TO FILE
## EXHIBITS IN THE TRADITIONAL MANNER"

EHS seeks to submit a DVD recording of four television commercials referred to in part in the Glanz and Jennings Declarations.  Because the court has already found a question of fact based on the Glanz Declaration, the court need not go beyond it.  The court will therefore deny the motion and not reach EIW's arguments in opposition to the motion.

## VII.  EIW'S MOTION "FOR FEES AND COSTS FOR THE
## DEPOSITIONS OF STEVE SILVERS AND KIMBERLY MADORE-SMITH . . ."

EIW contends that it is entitled to fees and costs associated with the depositions of Silvers and Madore-Smith because, contrary to EHS's Rule 30(b)(6) disclosures, these two witnesses were not knowledgeable corporate officers who could answer questions about the marketing activity of EHS.  (Def.'s 11/7/06 Br. at 10-15.)  EHS responds that the information sought was either already or later provided in written form and therefore the court should deny the motion.  (Pl.'s 12/8/06 Br. at 2-11.)

EHS's response obviates the need for this court to recount the many instances in both depositions where the deponents answered that they did not know or did not care to speculate.  The import of the response is to concede that the depositions were unhelpful, but with the caveat that EIW got what it needed in written form.  EIW argues persuasively in its reply brief that this argument would make a mockery of requiring knowledgeable corporate officials at depositions.  The essence of live depositions is the opportunity to pursue lines of inquiry through a give and take that is impossible to achieve solely through written communication.  Further, depositions exist to test and

23

verify the record evidence with sworn testimony.  Written responses, however complete,

do not have the effect of sanitizing the conduct of EHS at the depositions.

EHS has thus failed to meet its obligation under Rule 30(b)(6) to produce

knowledgeable witnesses who could speak on behalf of the corporation.  Rule 37

authorizes the court to sanction that failure:

> If a party or an officer, director, or managing agent of a party or person
> designated under Rule 30(b)(6) or 31(a) to testify on behalf of a party fails
> to . . . provide or permit discovery . . . the court in which the action is
> pending may make such orders in regard to the failure as are just . . . .

Fed. R. Civ. P. 37(b)(2).  The court may award attorney fees and expenses caused by

the failure "unless the court finds that the failure was substantially justified or that other

circumstances make an award of expenses unjust."  *Id.*  EHS's response offers no

substantial justification for its failure, nor do other circumstances make an award of

expenses unjust.  Indeed, given the late-breaking Glantz Declaration, the infirmity of the

depositions is all the more egregious.  Had the deponents been fully prepared, there

may have been no need for the declaration and, in turn, EIW may have suffered no

prejudice.  As such, the court will order EHS to pay the reasonable expenses that EIW

incurred in taking both depositions and in filing its motion for fees and costs.  The court,

however, does not believe that it is appropriate to preclude Silvers and Madore-Smith

from testifying at trial.  Such testimony, to the extent that EIW may impeach it with the

non-answers given at deposition, may actually benefit EIW if presented at trial.

24

**VIII.  CONCLUSION**

For the reasons discussed above, IT IS ORDERED that Plaintiff's "Motion to Dismiss Counts VI through XVII of the Counter-Complaint" [Dkt. # 68] is GRANTED.

IT IS FURTHER ORDERED that Defendant's Motion "To Compel Discovery or in the Alternative for an Adverse Inference" [Dkt # 88] is DENIED as moot.

IT IS FURTHER ORDERED that Defendant's "Motion for Summary Judgment . . ." [Dkt # 75] is DENIED.

IT IS FURTHER ORDERED that Defendant's Motion "To Strike the Declaration of Joel Glantz and Declaration of Shannon Jennings . . ." [Dkt # 97] is DENIED.  The court will, however, grant some relief.  Plaintiff shall make Glantz available for deposition, in Michigan[9] and **no later than May 11, 2007,** and Plaintiff shall pay all reasonable fees and costs that Defendant incurs as a result of the deposition.  Plaintiff shall also pay one third of the reasonable fees and costs that Defendant expended to file and argue its motion for summary judgment.

IT IS FURTHER ORDERED that Plaintiff's "Ex Parte Motion for Leave to File Exhibits in the Traditional Manner" [Dkt # 101] is DENIED.

IT IS FURTHER ORDERED that Defendant's Motion "For Fees and Costs for the Depositions . . ." [Dkt # 84] is GRANTED.  Plaintiff shall pay the reasonable expenses that Defendant incurred in taking the depositions of Steve Silvers and Kimberly Madore-Smith and in filing its motion for fees and costs.

---

[9]The parties may, by agreement and at their convenience, conduct the deposition outside of Michigan.

IT IS FURTHER ORDERED that, upon completion of the deposition of Glantz,

Defendant shall submit a global bill of costs detailing the reasonable fees and costs to

which it is entitled pursuant to this order.  Plaintiff may submit any objections **within two**

**weeks** of Defendant's filing of a global bill of costs.


       S/Robert H. Cleland _____
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated:  April 23, 2007


I hereby certify that a copy of the foregoing document was mailed to counsel of record
on this date, April 23, 2007, by electronic and/or ordinary mail.

       S/Lisa Wagner _____
Case Manager and Deputy Clerk
(313) 234-5522